# CALEDONIA COUNTY.

## AUGUST TERM, 1867.

[Continued from page 270.]

---

## WHEATON LIVINGSTON *v.* TOWN OF ALBANY.

### *Soldiers' Bounty. Towns. Recruiting Officers.*

A town having sixteen men assessed as its quota of the then last call, under a warning, (*third,*) " to see if the town will raise money to pay bounties to soldiers who may enlist to fill our quota on said call, and how much;" (*fourth,*) "to see if the town will vote and pay bounties to re-enlisted soldiers who have not been paid bounties." Voted, under the *third* article, to pay each volunteer a sum named "as town bounty, when mustered into the service of the United States, to the amount of the quota of the town" under that call; and, "voted to pass over the 4th article in the warning." *Held,* that from the warning and votes the town intended to use, and did use the word "quota," with reference to the number then actually due from the town after deducting the credits; therefore the plaintiff, being one of said credits, having previously re-enlisted in the field, and been mustered to the credit of said town, but not applied on any quota, all of which the town had knowledge, could recover no bounty under said votes.

A vote to "pass over" the *fourth* article, though not strictly parliamentary, indicated the judgment of the town upon the merits of the question as fully as though the motion and vote had been to *dismiss* the article, and was a decision of the town against paying bounties to soldiers who had re-enlisted to the defendant's credit.

The town not being bound to pay the plaintiff a bounty under said vote upon the 3d article, or any other vote, is not bound by a promise to pay him a bounty, made subsequent to said vote by one of its selectmen who was also a recruiting officer of the town.

ACTION OF ASSUMPSIT, to recover a town bounty, with general and special counts. Plea, general issue, and trial by jury, at the December Term, 1866, STEELE, J., presiding.

On the 18th day of July, 1864, the President called for 500,000 men; the quota assessed on the town of Albany, Vermont, was sixteen men, but as the town had furnished a surplus of five men there

were but eleven men actually due. In a warning for a town meeting, dated the 29th day of July, 1864, to be holden on the 11th day of August, 1864, were the following articles, numbered third and fourth, respectively: " To see if the town will raise money to pay bounties to soldiers who may enlist to fill our quota on said call, and how much." " To see if the town will vote and pay bounties to re-enlisted soldiers who have not been paid bounties." Under the third article the town voted " to pay each volunteer five hundred dollars for one year, six hundred and fifty dollars for two years, and eight hundred dollars for three years, as town bounty, when mustered into the service of the United States, to the amount of the quota for the town under the last call of the President for five hundred thousand more men." The town " voted to pass over the fourth article in the warning." The plaintiff was one of the surplus men above mentioned, and re-enlisted in the field on the 5th day of April, 1864, and claimed that, as he was applied on the quota under the call for 500,000 men, that he was entitled to the bounty voted under the third article. The plaintiff obtained a furlough in January, 1865, to come home, and while on his way the selectmen of the town of Rockingham offered him a bounty of six hundred dollars if he would get himself transferred to the credit of that town. On the 13th day of January he arrived at Albany and saw John C. Dow, one of the selectmen of the town, at Shepherd's tavern, and told Dow he had come to see about his bounty, and that the town of Rockingham had offered him a bounty of six hundred dollars if he would get himself transferred to the credit of that town, and that he wanted they should cross out his name and send another man in his place, or allow him to be transferred to the credit of the town of Rockingham, or pay him a bounty.

The plaintiff's testimony tended to show that Dow then promised the plaintiff the same bounty as others had on that call, if he would remain to the credit of Albany, and in consideration of said promise he did remain. The defendant's testimony tended to deny the plaintiff's testimony on this point.

The plaintiff's evidence tended to show that the credit of soldiers could be changed after muster. Upon this point the defendant read

from circular No. 4, January 8th, 1864, of Adjutant and Inspector's Report 1864, page 131 of appendix "A," against the objection of the plaintiff, showing that after the muster had been completed, and the muster-in rolls prepared and forwarded, no changes in the credits of men could be allowed.

The published volumes of the Adjutant and Inspector General's Reports were also used in evidence, against objection, to show the calls for men, quotas assessed, etc. The court held the defendant must recover because no bounty had been voted by the town to the class of soldiers represented by the plaintiff.

The court, under instructions not excepted to, submitted the following question to the jury : " Did or did not John C. Dow profess to make a contract for the town, with the plaintiff, to pay the plaintiff a bounty." To which the jury returned answer : " We find he did."

Verdict for the defendant, by order of court. Each party excepted to all rulings made by the court against them respectively.

Other facts appear in the opinion.

*J. D. Stoddard* and *Jonathan Ross*, for the plaintiff.

*Timothy P. Redfield*, for the defendant.

The opinion of the court was delivered by

WILSON, J. The main question presented for adjudication is, whether the town, by its vote of August 11th, 1864, authorized the payment of a bounty. to the plaintiff. It appears that the plaintiff, on the 5th day of January, 1864, re-enlisted for three years to the credit of the town of Albany, but knowledge of his re-enlistment did not reach the defendant till the last of April, 1864, at which time all quotas assigned to the defendant town, had been filled, and the plaintiff stood as a surplus man to the credit of the town. The town, on the 29th day of July, 1864, by its warning of that date, called a meeting of its inhabitants, on the 11th day of August, 1864, to provide for the payment of bounties to soldiers who should enlist to the credit of the town under the call of July 18th, 1864. The third article of the warning was as follows : " To see if the town will

raise money to pay bounties to soldiers who may enlist to fill our quota on said call, and how much." The fourth article of the warning was, " to see if the town will vote and pay bounties to re-enlisted soldiers who have not been paid bounties." Under the third article the town voted to pay each volunteer $500. for one year; $650. for two years, and $800 for three years, as town bounty, when mustered into the service of the United States, to the amount of the quota for the town under that call. It will be observed that the word *quota* is used in the third article of the warning, and in the vote of the town under it, August 11th, 1864, as applicable to the whole number of men which should be assigned as the quota of the town under that call, or as applicable only to the number actually due from the town under the call. It appears that of the 500,000 men called for by the President's proclamation, under date of July, 1864, it was ordered that 5,156 men should be raised in Vermont. The regulations under which this state was required to raise the number of men assigned (to her) were embraced in general order No. 10 of the Adjutant General, under date of July 30th, 1864. That order stated that the number of men required would be assessed upon the several towns in this state, and that the several quotas of the towns would be announced immediately; and it provided that the quota of each town would be reduced by any excess such town might have previously furnished over all calls made prior to July 18th, or increased by its deficiency under such calls, as the case might be. The exceptions state that the quota of the defendant under the call of July 18th, 1864, was sixteen men, and that there were five surplus men standing to the credit of the town, which were applied in reduction of the quota under the call, of whom the plaintiff was one. It may be true that the word *quota*, as used in the order of the Adjutant General, means the whole number of men assigned to the town under the call, without reference to its credits in excess of previous calls, or its deficiency under such calls. The language of the order, " that the quota would be reduced by such credit, or increased by such deficiency," would seem to warrant this conclusion. But the more important inquiry in this case is, in what sense did the defendant use the word *quota* in the warning of July 29th, and in the vote

of August 11th, 1864? This question must be determined by the warning and votes of the town under it, in the light of surrounding circumstances. The third article of the warning authorized the town to raise money and pay bounties to soldiers who should enlist to fill the quota of the town under that call. The fourth article authorized the town to vote and pay bounties to re-enlisted soldiers who had not been paid bounties. At the time this warning was written the town had full knowledge of the credits which would apply in reduction of its quota.

The language of the warning, we think, leaves no doubt that the selectmen, by the 4th article, intended to submit, and did submit to the town, the question whether the town would vote and pay bounties to soldiers who had previous to that time re-enlisted to the credit of the defendant, and had not been paid bounties. This article upon its face, and by its express terms, not only limited the right of the town to vote bounties only to such soldiers as had already re-enlisted, but it treated this class of soldiers, in respect to the matter of town bounties, as separate and distinct from those to whom the town would be authorized to vote bounties under the third article in the warning. The town, at its meeting on the 11th of August, had knowledge that the plaintiff and four others were then standing to its credit. The records of that meeting show that the town voted to pass over the fourth article in the warning. The vote to pass over this article, though not strictly parliamentary, may be the judgment of the town upon the merits of the question, as fully obtained as if the motion and vote had been to dismiss the article. We assume, in the absence of any evidence, to the contrary, that the town, by its vote under the fourth article, decided not to pay bounties to soldiers who had re-enlisted to the defendant's credit, or, in other words, the town, by that vote, declined to pay bounties to this class of soldiers. We think it clearly appears from the warning of the meeting, and by the votes of the town under it, that the town intended to use, and did use the word *quota* with reference to the number then actually due from the town, after deducting the credits. It is not claimed by the plaintiff that he continued his credit under any misapprehension as to the legal effect of the votes of the town ; nor does it

appear to us that the record of the proceedings of the meeting was in any way calculated to mislead him.    Under such circumstances it would not be a fair construction of the votes of the town, to say that the town dismissed the fourth article in the warning, for the reason that any other vote under it was rendered unnecessary by the vote under the third article ; clearly not when it appears that the vote under the third article made no express provision for paying bounties to re-enlisted soldiers.    By the fourth article the question of paying bounties to this class of soldiers was brought expressly before the meeting.    The vote under this article denied the plaintiff a bounty, and we are not aware of any rule of interpretation or construction, which would authorize an inference from the vote under the third article that the defendant intended by that vote to pay a bounty which the town by its vote under the fourth article expressly refused. It is insisted by the plaintiff's counsel that the promise of Dow, as selectman and recruiting officer, in connection with the vote of August 11th, 1864, bound the town to pay the plaintiff the bounty in question. But it is not claimed by the plaintiff that a bounty had been voted by the town to the class of soldiers represented by the plaintiff, unless this class of soldiers is embraced in the vote of the town under the third article of the warning, and under that vote, we think, Dow had no authority to bind the town for payment of a bounty to the plaintiff.

The result is, the judgment of the county court is affirmed.