### FRANCIS D. SARGENT v. TOWN OF LUDLOW.

*Soldier's Bounty. Construction of Vote. Warning. Towns. Re-enlisted Veteran. Veteran Reserve Corps.*

A warning "to see if the town will pay bounties to veterans who have re-enlisted in the field," and a vote "to pay each re-enlisted veteran who has re-enlisted for," etc., *held* not to entitle one to a bounty who was discharged before his re-enlistment. The meaning is just the same as though the words "re-enlisted in the field" had been in the vote as they were in the warning. And the words "re-enlisted veteran," in the vote, mean veteran "re-enlisted in the field."

The term "veterans re-enlisting in the field" meant those soldiers who re-enlisted while they were yet held to military service under a former unexpired enlistment. It did not include those who had been discharged and then re-enlisted.

Where the warning was "to consider the propriety of paying bounties to such persons as may enlist" to fill an existing quota, and the vote was "to pay to each volunteer to fill the required quota," etc., it was *held* that the vote had reference to those who should thereafter enlist.

ASSUMPSIT to recover a town bounty. Plea, the general issue. Trial by the court, December term, 1869, BARRETT, J., presiding.

The plaintiff declared upon, and claimed to recover under a

vote passed at a town meeting, held March 11, 1865 ; and he sub-sequently filed an additional count in which he claimed to be entitled to recover upon a vote passed at a town meeting, held December 31, 1863.    Article 7 in the warning of the meeting of the defendant town, held March 11, 1865, was as follows :

" To see if the town will pay bounties to *veterans* who have re-enlisted in the field."    " *Voted* " ( upon said article ) " to pay to each re-enlisted veteran, who has re-enlisted for three years, and who has received no town bounty, five hundred dollars ; and to increase the bounty of those re-enlisted veterans who have received some bounty, to five hundred dollars, excepting commissioned officers, and those who have died leaving no families, and de-serters."

Article 2 in the warning of the meeting held December 31, 1863, was as follows :

" To consider the propriety of paying bounties to such persons as may enlist in the service of the United States, for the purpose of filling the quota of the President's last call of 300,000 men, and the deficiency under the draft of July, 1863."    " *Voted* " ( upon said article ) " to pay a bounty of five hundred dollars to each volunteer to fill the required quota of the town of Ludlow, of the President's last call of 300,000 men, and the deficiency under the draft of July, 1863."

The plaintiff's original enlistment was September 24, 1861, into company E, 6th regiment.    He was honorably discharged Novem-ber 30, 1862, and re-enlisted June 27, 1863, into the Veteran Reserve Corps, and was again and finally discharged November 15, 1865.    This corps was organized under the War Department. The State had nothing to do with it.    It was not a state organiza-tion, but persons enlisting in it from Vermont were credited to the State, as in state organizations.    Under the call of October 19, 1863, which was the call pending when the said vote of December 31, 1863, was passed, Ludlow had one man to furnish, and under the draft of July, 1863, twelve men.    The plaintiff showed what was the standing of Ludlow under the different calls, subsequently and down to the time of the said town meeting, held March 11, 1865, and the number of men re-enlisted, etc., which it is not neces-sary to state in detail, in view of the manner in which the case is disposed of.    The plaintiff's re-enlistment was not reported to the

adjutant general of the state until subsequent to February, 1864. Gov. Washburn being on the stand as a witness for the plaintiff, was asked by counsel for the plaintiff,

" If the plaintiff had been reported at the time he last enlisted, would he have answered on the call of October 19, 1863 ? "

*Answer*: " I am hardly able to answer the question, for we didn't know about the Invalid Corps till April, 1864. ( Invalid Corps was the first designation of what was afterwards designated the Veteran Reserve Corps.) When enlistments into the corps were reported to my office I credited them, and should have credited any when reported. If a report had been made before October 19, 1863, I should have credited it when received. Whether it was intended to operate before reported, or only from the date of the report, I don't know. In the latter part of the war, for awhile, credits took effect from the date of the muster-in, afterwards from the date of enlistment."

*Question by the same :* " After the plaintiff re-enlisted, whose duty was it to report it to you ? "

*Ans.* Those reports always came from the provost marshal's office, is all I can say about it. I should have paid no heed to a report from the plaintiff himself. I only heeded the muster-in roll of those re-enlisted in the field ; and the report of the provost marshal general of the state, of enlistments into the Veteran Reserve corps. The enlistments into that corps were for three years."

Upon the evidence being closed, by consent of counsel, a *pro forma* judgment was entered for the plaintiff for $500, and interest from ———, with leave to except. The defendants excepted.

*Sewall Fullam* and *W. H. Walker*, for the defendants.

*F. C. Robbins* and *W. C. French*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J.  In the original declaration, the plaintiff counted on the vote of March 11, 1865, and upon this his counsel mainly rely.  In order to recover he must be shown to come within that vote.  The interpretation and meaning of the vote are to be gathered from its language, taken in connection with the article

in the warning in pursuance of which the vote was passed.   In this mode of considering it, we have no doubt that in truth it means just the same as if the words " re-enlisted in the field " had been used in the vote just as they were in the warning; and we think that " re-enlisted veteran," in the vote, means veteran " re-enlisted in the field."   The counsel do not seriously differ about this.   Their battle is principally upon the question whether the plaintiff was a " veteran re-enlisted in the field."

Upon this question we have no doubt.   The language itself is unequivocal in its import, if regard be had to the subject matter with reference to which it was used.   There was no ambiguity about this in the actual history of the matter.   Everybody knew what was meant, while the thing was going on, by " veterans re-enlisting in the field."   It meant those soldiers who re-enlisted while they were yet held to military service under a former unexpired enlistment; and it meant nothing else.   A man who had been a soldier in service, ceased to be a *soldier in the field* when he received a full discharge from such service.   That term, " in the field," has just as clear and well defined a meaning when used with reference to army service in a state of war, as any other plain and well understood expression.   " Soldiers in the field," " veterans in the field," " men in the field," " army in the field," " officers in the field," all mean persons in the military service for the purpose of carrying on the pending war.

A person like the plaintiff, who had been several months out of the army, though he may in common parlance perhaps be properly enough called a *veteran* on account of the service he had seen before his discharge, could not with any propriety be said to be a veteran in the field at the time the plaintiff enlisted into the invalid corps.   He therefore cannot be regarded as coming within the vote counted upon in the original declaration.

The amended count is upon the vote of December 31, 1863 ; " to pay a bounty of $500 to each volunteer to fill the required quota of the last call for 300,000, and the deficiency under the draft of July, 1863."   The reason why the plaintiff is not entitled to recover under that vote is that the vote has reference to those who should *thereafter* enlist for the purposes named.   The object of passing

it was to induce enlistments to such an extent as might then be necessary to fill the quota under the call, and the deficiency under the draft, and not to make compensation to those who had already enlisted. He had, in fact, enlisted before either the draft or the call had taken place. He therefore did not fall within the scope and purpose of the vote. It is moreover to be remarked that he did not, in fact, apply for either of the purposes named in the vote. See *Hartwell* v. *Newark*, 41 Vt., 337 ; *Livingston* v. *Albany*, 40 Vt., 666. The same has been held in some cases during this winter's circuit.

The judgment of the county court is reversed, and judgment for the defendant.